R. Scott Shuker (Florida State Bar No. 984469
rshuker@lseblaw.com
bknotice@lseblaw.com
John B. Dorris (Florida State Bar No. 0093744
jdorris@lseblaw.com
bknotice@lseblaw.com
Attorneys for Robert Morrison, Receiver
Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
P. O. Box 3353 (32802-3353)
Orlando, FL 32801
Tel:  407-481-5800
Fax: 407-481-5801

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>FREEDOM ENVIRONMENTAL SERVICES, INC., a Delaware Corporation, MICHAEL BORISH, and MICHAEL CIARLONE,<br><br>DEFENDANTS. | **RECEIVER'S QUARTERLY STATUS REPORT AS OF JUNE 30, 2013**<br><br>CIVIL NO. 6:12-cv-1415-Orl-28-DAB |

**ROBERT MORRISON** ("Receiver"), duly appointed Receiver for FREEDOM ENVIRONMENTAL SERVICES, INC. ("Freedom" or the "Company"), respectfully presents this *Receiver's Quarterly Status Report as of June 30, 2013* ("6/30/13 QSR") and states as follows:

## SUMMARY OF OPERATIONS OF RECEIVER

1. The Receiver was appointed by this Court on September 17, 2012, pursuant to an *Order Appointing Receiver* (Doc. No. 5) in the matter of *Securities and Exchange Commission v. Freedom Environmental Services, Inc., Michael Borish, and Michael Ciarlone* (Case No. 6:12-cv-1415-Orl-28-DAB) (the "Receiver Order").

2. The Receiver's First Report, covering the period from September 18, 2012 to September 30, 2012, was filed with the Court on October 31, 2012 (Doc. No. 36).

3. The Receiver's Second Report, covering the period from October 1, 2012 to December 31, 2012, was filed with the Court on February 5, 2013 (Doc. No. 48).

4. The Receiver's Third Report, covering the period from January 1, 2013 to March 31, 2013, was filed with the Court on May 2, 2013 (Doc. No. 67).

5. As noted in the Receiver's First Report, as of the date the Receiver Order was issued, Freedom was affiliated with or operated under the following trade names: B&P Environmental Services, LLC ("B&P"), Brownies Wastewater Solutions, LLC ("Brownie's"), and Grease Recovery Solutions, LLC ("GRS"). The combined companies had approximately 33 employees. Unless otherwise noted, hereafter the term "Company" shall mean the consolidated entities of GRS, Brownie's, B&P, and Freedom.

6. The Receiver Order did not list or identify B&P, Brownie's or GRS. This created problems for the Receiver as banks, vendors, and creditors were reluctant to recognize the Receiver's authority over those entities. This necessitated additional time and expense and disrupted the Receiver's activities.

7. The Securities and Exchange Commission (the "Commission") filed a *Motion to Amend Order Appointing Receiver* (Doc. No. 9) to include the other entities as receivership entities. However, that motion was denied (Doc. No. 10). The Commission filed a *Motion to Amend Order Appointing Receiver (Corrected/Renewed)* (Doc. No. 33). On November 2, 2012, that motion was granted (Doc. 37). By this order, the Receiver Order was amended to include B&P, Brownies, and GRS.

8. On October 3, 2012, the Receiver filed his *Application to Employ R. Scott Shuker and the Law Firm of Latham, Shuker, Eden, and Beaudine, LLP as Receiver's Counsel, nunc pro tunc to September 17, 2012* (Doc. No. 24). The application was approved by the Court on October 9, 2012 (Doc. No. 27).

9. On October 5, 2012, the Receiver filed an *Application to Employ Morrison Valuation and Forensic Services, LLC as Forensic Accountant, nunc pro tunc to September 17, 2012* (Doc. No. 26). The Receiver is the Managing Partner and sole owner of Morrison Valuation and Forensic Services, LLC (MorrisonVFS). The application was denied by the Court (Doc. No. 29).

10. On October 25, the Receiver filed an *Amended Application to Employ Morrison Valuation and Forensic Services, LLC as Forensic Accountant, nunc pro tunc to September 17, 2012* (Doc. No. 34). The application was approved by the Court on October 29, 2012 (Doc. No. 35).

11. At the commencement of the receivership, the Receiver found the Company to have significant cash flow problems. Critical vendors were not being paid and had revoked the Company's credit. Most vendors were requiring "cash on delivery" ("COD") terms and/or

3

significant deposits, tying up critical working capital. The Receiver was able to negotiate limited credit terms with some of the Company's critical vendors, but the Company continued to be challenged by credit issues.

12. In spite of the financial condition of the Company, the Receiver determined that once stabilized, the Company could operate with positive cash flow and that the Receiver's ultimate recovery for the benefit of creditors and equity holders would be better if the Company and/or its assets were sold as a going concern as opposed to in a liquidation.

13. On December 14, 2012, Receiver filed a plan for an exit strategy ("Exit Plan") (Doc. No. 41). The Exit Plan contemplated negotiating with two identified parties to sell the Company and/or their assets as going concerns. To the extent that a reasonable offer could not be obtained from either of the two identified parties, the Receiver intended to seek the Court's approval to retain a business intermediary to market the Companies and/or their assets as going concerns. If the intermediary was unsuccessful in generating a reasonable offer to purchase the assets and/or the Companies, the Receiver intended to seek approval from the Court to conduct a closed bid process to sell the Companies or their assets as going concerns.

14. On January 13, 2013, Receiver, after negotiations with the Commission, made an *Offer of Settlement of Freedom Environmental Services, Inc.* (the "Settlement") with the Commission. Terms of the Settlement include Freedom's consent to the entry of an order by the Commission that revokes the registration of the Company's securities. While drastic, the Commission advised the Receiver and his counsel that it would seek revocation of the registration whether or not Freedom consented. Through negotiations with the Commission, the Commission agreed to not seek monetary damages against Freedom. Any such damages would need to be paid

before any distributions to unsecured creditors and to shareholders. Further, the Receiver determined that Freedom could not afford the burden of annual professional fees to comply with the Securities Exchange Act of 1934.

## RECEIVER'S MOTION TO APPROVE PROCEDURES FOR SALE OF CERTAIN ESTATE ASSETS, AND TO CONDUCT SALE OF ESTATE ASSETS BY PUBLIC AUCTION PURSUANT TO THE PROPOSED SALE PROCEDURES

15. On April 16, 2013, the Receiver filed the Receiver's Motion to Approve Procedures for Sale of Certain Estate Assets, and to Conduct Sale of Estate Assets by Public Auction Pursuant to the Proposed Sale Procedures (the "Motion to Sell Assets") (Doc. No. 54).

16. The Receiver received two competing offers from prospective purchasers of the Company's assets as a going concern. After inspection and analysis of the competing offers, the Receiver and his counsel began to negotiate the terms of an asset purchase agreement with BSP Holdings, LLC (BSP), one of the competing bidders. A final asset purchase agreement was executed by the parties on April 15, 2013 (the "BSP Offer" and the "BSP Purchase Agreement"), and was attached as Exhibit B to the Motion to Sell Assets.

17. The Motion to Sell Assets sought approval to implement a bidding procedure to sell the assets of the Company to the bidder that offered the most favorable terms. The Motion to Sell Assets also sought approval to sell the assets to BSP pursuant to the BSP Purchase Agreement in the event that the bidding process did not produce a competing bid that exceeded the BSP Offer by at least $250,000.

18. On April 29, 2013, the Court heard the Motion to Sell Assets. Objections from one of the individual defendants in the core litigation and a creditor of the Company were also heard. The Court denied the objections and approved the Motion to Sell Assets.

19. The Receiver provided copies of the Motion to Sell Assets (which included complete copies of the BSP Purchase Agreement and the Procedures for Sale of Certain Estate Assets) to the other known competing bidder, to all known creditors of the Company, and to specific grease recovery and wastewater recovery businesses in central Florida identified by the Receiver through his independent research. The Receiver also advertised an invitation to bid for four consecutive weeks in The Orlando Business Journal, a weekly business journal publication.

20. The bidding period terminated on May 31, 2013 with no competing bids received. The Receiver concluded that BSP presented the best offer for the assets of the Company. Notable terms of the BSP Offer included the conversion of approximately $1.2 million of secured debt into equity, commitment to distribute 50% of any net recovery from causes of action against former officers or professionals to unpaid creditors and/or stockholders, and a contribution of up to $250,000 toward the administrative fees and costs of the receivership estate.

21. On June 10, 2013, the Court entered its Order Authorizing the Receiver's Sale of Certain Assets of the Receivership (Doc. No. 70). The Receiver and his counsel then commenced negotiations with representatives of BSP resulting in a closing of the transaction on June 24, 2013, at which time BSP took control of the business operations and the assets acquired pursuant to the BSP Purchase Agreement.

22. The process of transferring credit card merchant accounts and electronic funds transfer accounts requires several weeks. As of the date of this report, BSP continues to transition

the operations from the Receiver to BSP. At BSP's request, the Receiver continues to receive in his receivership bank account proceeds received by BSP for services rendered by the former Brownies and GRS and, with approval by BSP officers, make ordinary course disbursements approved by BSP. Those funds are assets of BSP and not of the estate. This is a temporary arrangement that should end within 30 days.

23. In addition to the above, from April 1, 2013 through June 30, 2013, the Receiver and/or his staff have performed the following activities in the normal course of the Receivership:

    a. Provided accounting and financial oversight;

    b. Investigated and identified unrecorded assets and liabilities;

    c. Communicated with, and responded to inquiries from critical vendors;

    d. Communicated with, and responded to inquiries from secured and unsecured creditors;

    e. Communicated with and responded to inquiries from stockholders;

    f. Communicated with the Securities and Exchange Commission regarding the proposed sale transaction;

    g. Communicated, met and negotiated with potential buyers of the Company and its assets, and;

    h. Prepared financial and management reports for distribution to lenders and potential buyers and for reporting to the Court.

24. During the initial phase of the receivership, the Receiver and his staff were required to physically be at the Company's offices much of the time. The Receiver and his staff have gradually been able to reduce the amount of time they are required to invest in the Receivership by

relying on the management team selected by the Receiver and transitioning from a hands-on operating role to an oversight role. During the period from April 1, 2013 and June 30, 2013, the Receiver and his team spent the majority of their time on activities related to the sale of the Company's assets.

## CASH ON HAND; ACCRUED ADMINISTRATIVE EXPENSES; UNENCUMBERED FUNDS

### Cash on Hand

25. When the receivership commenced, the Receiver recovered $128,787.24 from the Company's various bank accounts and deposited the funds into a new bank account of the Receiver (the "Receiver's Account"). The Receiver is the only individual with signature authority on the Receiver's Account. In addition to the Receiver's Account, at the commencement of the receivership, the Company also maintained two bank accounts with Reunion Bank, its primary secured lender at the time. There was upon commencement of the receivership and remains $124.49 combined in those two accounts.

26. The Company's cash accounts were included in the sale of the Company's assets, which closed on June 24, 2013. On that date, the Receiver held a total of $85,740.50 in cash for the Company as follows:

    a.     $77,398.68 in the Receiver's Account.

    b.     $124.49 in pre-receivership Frozen Accounts of the Company. These funds are held in accounts in the financial institution that was the Company's primary secured lender.

8

    c.    $790.83 in the Petty Cash Fund. The Company maintains a petty cash fund kept in the Company's on-site safe (the "Petty Cash Fund"). Due to its prior credit history, the Company often has to pay for goods and services in cash. These payments are made from the Petty Cash Fund. The Petty Cash Fund is periodically replenished from the Receiver's Account.

    d.    $7,426.50 in un-deposited funds from daily sales. These un-deposited funds represent cash collected from customers that was not yet deposited in the Receiver's Account.

27.    As of the date of this report, BSP continues to transition the operations from the Receiver to BSP. At June 30, 2013, the Receiver held a total of $132,920.93 in cash for the Company as follows:

    a.    $130,536.89 in the Receiver's Account. The receipts into and disbursements from the Receiver's Account for the quarter ending June 30, 2013, are summarized in the Standardized Fund Accounting Report (SFAR), attached as Exhibit A.

    b.    $124.49 in pre-receivership Frozen Accounts of the Company.

    c.    $459.55 in the Petty Cash Fund.

    d.    $1,800.00 in un-deposited funds from daily sales.

### Accounts Payable and Accrued Administrative Expenses

28.    Exhibit D attached presents the accounts payable and accrued administrative expenses of the Company at June 30, 2013.

29. At June 30, 2013, the Receiver's Account included $130,537 in cash funds pending transition of the funds in the account to BSP, the buyers of the Company's assets. A liability is reflected in Exhibit D to show the Company's obligation to turn those funds over to BSP.

30. The Receiver, and any professional retained by him, must file fee applications with the Court seeking approval for payment. As of June 30, 2013, there were no fee applications filed in the receivership. However, the following table summarizes the amount of professional fees that have accrued from September 17, 2012 through June 30, 2013, and that will be included in future applications to the Court for payment:

| Name | Description | Hours | Rate | Fees | Expenses | Total |
|---|---|---|---|---|---|---|
| Robert B. Morrison [1] | Receiver | 190.5 | $ 250.00 | $ 47,625.00 | $ 793.67 | $ 48,418.67 |
| Paul Dumm [2] | MVFS Staff | 478.6 | $ 200.00 | $ 95,720.00 | $ 122.35 | $ 95,842.35 |
| Shivam Jadeja | MVFS Staff | 20.6 | $ 150.00 | $ 3,090.00 | $ - | $ 3,090.00 |
| Latham, Shuker, Eden & Beaudine | Counsel to Receiver | 322.9 | $ 285.72 | $ 92,258.00 | $ 3,314.57 | $ 95,572.57 |
| Total Accrued Professional Fees | | 1,012.6 | | $ 238,693.00 | $ 4,230.59 | $ 242,923.59 |
| [1] Discounted from standard market rate of $300/hr | | | | | | |
| [2] Discounted from standard market rate of $250/hr | | | | | | |

31. The sale of the Company's assets included the assumption by the buyers of certain pre-receivership liabilities and potential claims and liabilities incurred during the receivership. Liabilities and potential claims not assumed by the buyers totaled $770,024, as presented in Exhibit D.

**RECEIVER'S RECEIPTS AND DISBURSEMENTS**

10

32. Exhibit B attached presents the Receiver's receipts and disbursements for the quarter ended June 30, 2013, and for the duration of the receivership (i.e., September 18, 20121 through June 30, 2013).

33. Exhibit B reflects that from April 1, 2013, through June 30, 2013, the Company experienced positive cash flow of approximately $97,300. That included payment by the Receiver for capital purchases of approximately $3,600 and payments to secured creditors of approximately $35,900.

**RECEIVERSHIP PROPERTY**

34. Exhibit C attached presents a list of the Company's assets and property held as of June 30, 2013, which included:

   a. $130,537 in cash funds in the Receiver's Account pending transition of the funds in the account to BSP. A liability in the same amount is reflected the Company's liability schedule presented as Schedule D;

   b. $50,000 in cash held in escrow. The APA with BSP provided that BSP would pay $250,000 toward administrative expenses of the receivership estate. The APA provided that $50,000 would be placed in escrow prior to closing of the transaction and that an additional $200,000 would be paid under the terms of a promissory note entered into at closing; and

   c. $200,000 promissory note from BSP.

---

[1] The Receiver Order was signed late in the day on September 17, 2012. The Receiver did not assume control over the Company, its accounts, or its assets until after the close of business on that day. Therefore, the accounting provided by the Receiver begins the following day, September 18, 2012.

## RECEIVER'S CLAIMS AND CAUSES OF ACTION

35. The sale of the Company's assets included the assumption of potential causes of action by the buyers. At June 30, 2013, the Company had no claims or causes of action.

## CREDITOR LIST

36. A summary of liabilities and potential claims of the Company as of June 30, 2013 is presented in Exhibit D. By including a creditor on this exhibit, the Receiver in no way waives his right at a later date to object to a claim made by the creditor. Additionally, there may be claims of which the Receiver is not yet aware. The Receiver reserves the right to adjust and amend this exhibit at a later date. The sale of the Company's assets included the assumption of potential causes of action by the buyers.

**RESPECTFULLY SUBMITTED** this 5 day of August 2013.

Robert B. Morrison, Receiver
518 S. Magnolia Avenue
Suite 110A
Orlando, FL 32801
Tel: 407-770-1280

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of August 2013, I caused to be sent by the methods stated below and to the parties listed below a true and correct copy of the foregoing **RECEIVER'S 6/30/13 QUARTERLY REPORT.**

R. Scott Shuker
Florida Bar No. 984469
rshuker@lseblaw.com
bknotice@lseblaw.com
Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
PO Box 3353 (32802-3353)
Orlando, FL 32801
Tel: 407-481-5800
Fax: 407-481-5801

Via Electronic Mail:

Robert Morrison
Morrison Valuation and Forensic Service
518 South Magnolia Ave., Ste. 110A
Orlando, FL 32801
Bob.morrison@morrisonvfs.com
Receiver for Freedom Environmental Services, Inc.

Daniel Wadley, Esq.
Paul Feindt, Esq.
Thomas M. Melton, Esq.
Securities and Exchange Commissions
15 West South Temple, Suite 1800
Salt Lake City, UT 84101
801-524-5796
Email: wadleyd@sec.gov
Email: feindtp@sec.gov
Email: meltont@sec.gov

Robert S. Gershman
Gershman & Gershman, PA
2160 W. Atlantic Ave., Second Floor
Delray Beach, FL 33445
Robert@rglawfirm.us
Attorney for Michael Ciarlone

Via USPS:
Michael Borish
3842 Winding Lake Circle
Orlando, FL 32835

Resorts Marketing Professionals, Inc.
c/o Michael Borish
3842 Winding Lake Circle
Orlando, FL 32835

EXHIBIT A

**STANDARDIZED FUND ACCOUNTING REPORT for FREEDOM ENVIRONMENTAL SERVICES, INC.**
Receivership; Civil Court Docket No. 6:12-cv-1415-Orl-28-DAB
Reporting Period 4/01/2013 to 6/30/2013

| FUND ACCOUNTING (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---:|---:|---:|
| Line 1 | Beginning Balance (As of 4/1/2013): | $ 52,539.71 | | |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income (See Schedule 1.1) | 1,515,045.25 | | |
| Line 3 | Cash and Securities | - | | |
| Line 4 | Interest/Dividend Income | - | | |
| Line 5 | Business Asset Liquidation | - | | |
| Line 6 | Personal Asset Liquidation | - | | |
| Line 7 | Third-Party Litigaion Income | - | | |
| Line 8 | Miscellaneous - Other | - | | |
| | Total Funds Available (Lines 1 - 8) | | 1,567,584.96 | |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursments to Investors | | - | |
| Line 10 | Disbursments for Receivership Operations: | | | |
| Line 10a | Disbursements to Receiver or Other Professionals | - | | |
| Line 10b | Business Asset Expenses (See Schedule 1.1) | 1,437,048.07 | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Investment Expenses | - | | |
| Line 10e | Third-Party Litigation Expenses | | | |
| | 1. Attorney Fees | - | | |
| | 2. Litigation Expenses | - | | |
| | Total Third-Party Litigation Expenses | - | | |
| Line 10f | Tax Administrator Fees and Bonds | - | | |
| Line 10g | Federal and State Tax Payments | - | | |
| | Total Disbursements for Receivership Operations | | 1,437,048.07 | |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | | | |
| Line 11a | Distribution Plan Development Expenses: | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | |
| | Independent Distribution Consultant (IDC) | - | | |
| | Distribution Agent | - | | |
| | Consultants | - | | |
| | Legal Advisers | - | | |
| | Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Miscellaneous | - | | |
| | Total Plan Development Expenses | - | | |
| Line 11b | Distribution Plan Implementation Expenses: | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Distribution Agent | - | | |
| | Consultants | - | | |
| | Legal Advisers | - | | |
| | Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | - | | |
| | Claimant Identification | - | | |
| | Claims Processing | - | | |
| | Web Site Maintenance/Call Center | - | | |
| | 4. Fund Adminstator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Federal Account Investor Restitution | | | |
| | (FAIR) Reporting Expenses | - | | |
| | Total Plan Implementation Expenses | - | | |
| | Total Disbursements for Distribution Expenses Paid by the Fund | | - | |
| Line 12 | Disbursements to Court/Other: | | | |
| Line 12a | Investment Expenses/Court Registry Investment | | | |
| | System (CRIS) Fees | - | | |
| Line 12b | Federal Tax Payments | - | | |
| | Total Disbursements to Court/Other: | | - | |
| | Total Funds Disbursed (Lines 9 - 12) | | 1,437,048.07 | |
| Line 13 | Ending Balance (As of 06/30/2013): | | | $ 130,536.89 |

| Line 14 | Ending Balance of Fund - Net Assets: | | | |
|---|---|---:|---:|---:|
| Line 14a | Cash & Cash Equivalents | | | $ 130,536.89 |
| Line 14b | Investments | | | - |
| Line 14c | Other Assets or Uncleared Funds | | | - |
| | Total Ending Balance of Fund - Net Assets | | | $ 130,536.89 |

STANDARDIZED FUND ACCOUNTING REPORT for FREEDOM ENVIRONMENTAL SERVICES, INC.
Receivership; Civil Court Docket No. 6:12-cv-1415-Orl-28-DAB
Reporting Period 4/01/2013 to 6/30/2013

| OTHER SUPPLEMENTAL INFORMATION: | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | *Report of Items NOT To Be Paid by the Fund:* | | | |
| Line 15 | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | - | | |
| | IDC | - | | |
| | Distribution Agent | - | | |
| | Consultants | - | | |
| | Legal Advisers | - | | |
| | Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Miscellaneous | - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | | | |
| | Claimant Identification | | | |
| | Claims Processing | | | |
| | Web Site Maintenance/Call Center | | | |
| | 4. Fund Adminstator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. FAIR Reporting Expenses | | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| Line 16a | *Investment Expenses/CRIS Fees* | | | |
| Line 16b | *Federal Tax Payments* | | | |
| | *Total Disbursements to Court/Other Not Paid by the Fund* | | | |
| Line 17 | **DC & State Tax Payments** | | | |
| Line 18 | **No. of Claims:** | | | |
| Line 18a | # of Claims Received This Reporting Period.................................................................................... | | | 0 |
| Line 18b | # of Claims Received Since Inception of Fund................................................................................. | | | 0 |
| Line 19 | **No. of Claimants/Investors:** | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period..................................................................... | | | 0 |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund.................................................................. | | | 0 |

Receiver:

By: _____
(signature)

Robert B. Morrison
(printed name)

Receiver
(title)

Date: _____, 2013

EXHIBIT B

**SECURITIES AND EXCHANGE COMMISSION**
v.
**FREEDOM ENVIRONMENTAL SERVICES, INC.**

<u>Receiver's Receipts and Disbursements</u>

|  | Quarter Ended 06/30/13 | From 9/18/2012 (Inception) to 6/30/13 |
|---|---:|---:|
| Beginning cash balance - Book: |  |  |
| Frozen Accounts & Petty Cash Fund | $ 6,833.38 | $ 89,766.14 |
| Receiver's Account | 36,693.14 | - |
|  | 43,526.52 | 89,766.14 |
| Receipts: |  |  |
| Operating income | 1,353,153.16 | 4,200,019.17 |
| Customer deposits received (net) | 75,720.00 | 133,075.00 |
| Sale of assets | 25,000.00 | 25,000.00 |
| Other | 14,681.10 | 44,198.57 |
| Total cash receipts | 1,468,554.26 | 4,402,292.74 |
| Total cash available for operations | $ 1,512,080.78 | $ 4,492,058.88 |
| Disbursements: |  |  |
| Salaries and wages | 571,963.01 | 1,792,489.39 |
| Job materials and costs | 623,250.95 | 1,823,452.30 |
| Cooking oil rebates | 17,991.28 | 40,644.71 |
| Advertising | 11,244.35 | 65,059.79 |
| Insurance | 34,682.99 | 120,066.79 |
| Professional fees | 618.75 | 7,987.72 |
| Rent | 26,097.76 | 130,082.33 |
| Taxes | - | 2,293.40 |
| Utilities | 7,464.24 | 24,285.46 |
| Other expenses | 38,322.37 | 148,751.09 |
| Secured creditor payments | 35,923.30 | 153,483.53 |
| Capital asset purchases | 3,650.24 | 34,273.47 |
| Other: Deposits - Fuelman | - | 10,000.00 |
| Other: Repayment of employee advances | - | 1,000.00 |
| Prior period adjustments and unreconciled variance[1] | - | (2,682.64) |
| Total Disbursements | 1,371,209.24 | 4,351,187.34 |
| Ending cash balance - Book | $ 140,871.54 | $ 140,871.54 |

**SECURITIES AND EXCHANGE COMMISSION**
v.
**FREEDOM ENVIRONMENTAL SERVICES, INC.**

<u>Receiver's Receipts and Disbursements</u>

|  | Quarter Ended 06/30/13 | From 9/18/2012 (Inception) to 6/30/13 |
|---|---:|---:|
| Reconciliation to of cash balance - Book to cash balance - Bank: |  |  |
| Ending cash balance - Book | $ 140,871.54 | $ 140,871.54 |
| Deposits in transit | (42,341.00) | (42,341.00) |
| Outstanding checks | 34,390.39 | 34,390.39 |
| Ending cash balance - Bank | $ 132,920.93 | $ 132,920.93 |
|  |  |  |
| Consisting of: |  |  |
| Frozen Accounts & Petty Cash Fund | $ 2,384.04 | $ 2,384.04 |
| Receiver's Account | 130,536.89 | 130,536.89 |
|  | $ 132,920.93 | $ 132,920.93 |
|  |  |  |
| Net cash flow | $ 97,345.02 | $ 51,105.40 |

[1] Consists primarily of bank reconciliation adjustments to reverse aged outstanding items.

Note: The Receiver funded The Receiver's Account with transfers of $128,787.24 of funds from the Frozen Accounts.

**SECURITIES AND EXCHANGE COMMISSION**
**v.**
**FREEDOM ENVIRONMENTAL SERVICES, INC.**

<u>Receivership Property as of June 30, 2013</u>

|  | Book Value | Estimated Market Value |
|---|---:|---:|
| **Current assets:** |  |  |
| Cash held in Receiver's account pending transition of accounts | $ 130,537 | $ 130,537 |
| Cash owned by BSP Holdiongs, LLC | (130,537) | (130,537) |
| Cash held in escrow | 50,000 | 50,000 |
| Promissory Note | 200,000 | 200,000 |
| Accounts receivable | - | - |
| Inventory | - | - |
| Other current assets | - | - |
| Total current assets | 250,000 | 250,000 |
| **Fixed assets:** |  |  |
| Machinery and equipment | - | - |
| Trucks and autos | - | - |
| Office furniture and equipment | - | - |
| Leasehold improvements | - | - |
| Other fixed assets | - | - |
| Gross fixed assets | - | - |
| Accumulated depreciation | - | - |
| Net fixed assets | - | - |
| Deposits and prepaids | - | - |
| Intangible assets: | - | - |
| 100% equity interest in Grease Recovery Solutions, LLC | - | - |
| 100% equity interest in B&P Environmental, LLC | - | - |
| Total assets/property | $ 250,000 | $ 250,000 |

SECURITIES AND EXCHANGE COMMISSION
v.
FREEDOM ENVIRONMENTAL SERVICES, INC.

Estimated Potential Claims/Liabilities as of June 30, 2013

NOTE: The amounts recorded below are based on an inspection and reconstruction of the Company's accounting records. The potential claims have not yet been analyzed or investigated by the Receiver. Therefore, the appearance of a creditor name or an amount on this schedule is in no way a waiver by the Receiver of his right to object to such claim. The Receiver reserves the right to amend or append this schedule at his sole discretion.

|  | 6/30/13 Balance |
|---|---:|
| Accrued Administrative Expenses of Receivership | $ 242,923.59 |
| **FREEDOM ENVIRONMENTAL SERVICES** | |
| 3000 · Accounts Payable - Receivership | $ - |
| 3000 · Accounts Payable - Pre-receivership | 83,205.75 |
| Total accounts payable (see attached detail) | 83,205.75 |
| 4110 · N/P Resort Marketing | 417,754.85 |
| TOTAL FREEDOM ENVIRONMENTAL SERVICES | $ 500,960.60 |
| **B&P ENVIRONMENTAL SERVICES** | |
| 3000 · Accounts Payable - Receivership | $ - |
| 3000 · Accounts Payable - Pre-receivership | 20,012.47 |
| Total accounts payable (see attached detail) | 20,012.47 |
| 3420 · Taxes payable | $ 111,484.00 |
| TOTAL B&P ENVIRONMENTAL SERVICES | $ 131,496.47 |
| **BROWNIES WASTEWATER SOLUTIONS** | |
| 3000 · Accounts Payable - Receivership | $ - |
| 3000 · Accounts Payable - Pre-receivership | 83,728.51 |
| Total accounts payable (see attached detail) | 83,728.51 |
| Damage Claim - Engle Martin Claim Svcs | 15,126.95 |
| Due to Resorts Marketing | 53.80 |
| TOTAL BROWNIES WASTEWATER SOLUTIONS | $ 98,909.26 |
| **GREASE RECOVERY SOLUTIONS** | |
| 3000 · Accounts Payable - Receivership | $ - |
| 3000 · Accounts Payable - Pre-receivership | 3,977.29 |
| Total accounts payable (see attached detail) | 3,977.29 |
| Claim - Ford Motor Credit (2009 F-450) | 16,174.64 |
| TOTAL GREASE RECOVERY SOLUTIONS | $ 20,151.93 |
| GRAND TOTAL | $ 994,441.85 |

SECURITIES AND EXCHANGE COMMISSION
v.
FREEDOM ENVIRONMENTAL SERVICES, INC.

Accounts Payable Detail as of June 30, 2013

|  | TOTAL |
|---|---|
| **FREEDOM ENVIRONMENTAL** | |
| GBH CPAs | $ 15,000.00 |
| O'Neill, Liebman & Cooper, P.A | 50,500.75 |
| Tarvaran | 17,705.00 |
| **TOTAL FREEDOM ENVIRONMENTAL** | $ 83,205.75 |
| | |
| **B&P ENVIRONMENTAL SERVICES, LLC** | |
| Caplan Butler | $ 20,012.47 |
| **TOTAL B&P ENVIRONMENTAL SERVICES, LLC** | $ 20,012.47 |
| | |
| **BROWNIES WASTEWATER SOLUTIONS** | |
| Amerisure Insurance - default judgment | $ 4,212.29 |
| AT&T Advertising Solutions | 48,542.54 |
| Charles Moorefield, MD, PA | - |
| Florida Department of Revenue | - |
| Friedman Schuman Attorneys | 2,177.50 |
| Michael Ciarlone | - |
| Neff Rentals | 9,936.18 |
| SBC-CPA | 18,860.00 |
| Sunbelt Rentals | - |
| **TOTAL BROWNIES WASTEWATER SOLUTIONS** | $ 83,728.51 |
| | |
| **GREASE RECOVERY SOLUTIONS** | |
| O'Neill, Liebman & Cooper, PA | $ 3,377.29 |
| SBC-CPA | 600.00 |
| **TOTAL GREASE RECOVERY SOLUTIONS** | $ 3,977.29 |
| | |
| **GRAND TOTAL** | $ 190,924.02 |