R. Scott Shuker (Florida State Bar No. 984469)
rshuker@lseblaw.com
bknotice@lseblaw.com
John B. Dorris (Florida State Bar No. 0093744)
jdorris@lseblaw.com
bknotice@lseblaw.com
Attorneys for Robert Morrison, Receiver
Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
P.O. Box 3353 (32802-3353)
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> PLAINTIFF, <br><br> v. <br><br> FREEDOM ENVIRONMENTAL SERVICES, INC., a Delaware Corporation, MICHAEL BORISH, and MICHAEL CIARLONE, <br><br> DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) RECEIVER'S FIRST INTERIM APPLICATION FOR AWARD OF FEES AND COSTS FOR THE RECEIVER AND HIS RETAINED PROFESSIONALS <br><br> CIVIL NO. 6:12-cv-1415-Orl-28-DAB <br><br> Judge John Antoon II |

**RECEIVER'S FIRST INTERIM APPLICATION FOR
AWARD OF FEES AND COSTS
FOR THE RECEIVER AND HIS RETAINED PROFESSIONALS**

ROBERT B. MORRISON ("Receiver"), duly appointed Receiver for FREEDOM ENVIRONMENTAL SERVICES, INC. ("Freedom" or the "Company") and MORRISON VALUATION & FORENSIC SERVICES, LLC ("MorrisonVFS" or "RETAINED ACCOUNTANT") and R. SCOTT SHUKER AND THE LAW FIRM OF LATHAM, SHUKER,

EDEN & BEAUDINE, LLP ("LSEB" or "RETAINED COUNSEL") respectfully request the Court's approval of this *Receiver's First Interim Application for Award of Fees and Costs for the Receiver and His Retained Professionals* ("First Application") wherein the Receiver and Retained Accountant seek total professional fees of $153,370.00 and costs of $916.02, for a total request in the amount of $154,286.02; and Retained Counsel seeks total professional fees of $110,928.00 and costs of $3,217.65, for a total request in the amount of $114,145.65, for the time period of September 17, 2012 through August 31, 2013.

**BACKGROUND**

1. Freedom is a corporation whose securities are registered under Section 12(g) of the Securities Exchange Act of 1934 (the "Securities Act"). The Company's stock was traded in the over-the-counter (OTC) market and quoted in the National Association of Securities Dealers Inter-dealer Quotation System (NASDAQ).

2. On or around July 17, 2010, Freedom purchased all of the membership units of B&P Environmental Services, LLC (B&P). B&P owned 100% of the outstanding common stock of Brownie's Wastewater Solutions, Inc. (Brownie's), a privately-held septic-tank, drain field, and plumbing service company. Brownie's services include residential and commercial septic tank pump-out, drain field and septic repair and construction, sewer and storm water pump-out, and traditional plumbing. Brownie's has been operating in central Florida since 1948.

3. Also on or around July 17, 2010, Brownie's purchased all of the assets of Vac and Jet Services, LLC (VJS). VJS provided institutional and commercial sewer, pump station, and storm water pump-out and disposal services. With the purchase of the VJS assets, Brownie's began to offer these services.

4. On August 18, 2010, Resorts Marketing Professionals, Inc. (RMP) and Michael Borish and Michael Ciarlone[1] personally, filed Articles of Organization with the State of Florida for Rolex Investments, LLC (Rolex). On October 4, 2010, Rolex filed Articles of Amendment to its Articles of Organization, changing its name to Grease Recovery Solutions, LLC (Grease Recovery Solutions, LLC and its predecessor Rolex Investments, LLC will be collectively referred to herein as "GRS" or "Grease Recovery Solutions"). On August 10, 2012, GRS filed a 2012 Limited Liability Company Amended Annual Report with the State of Florida disclosing Freedom as the sole managing member of GRS.

5. On or around December 13, 2010, Freedom purchased the assets of Grease-Tek a/k/a Clean Fuels, LLC ("Grease-Tek"). Grease-Tek was a "rendering grease" service and processing company. With the Grease-Tek assets, Freedom began providing "rendering grease" service and processing through GRS. "Rendering grease" service and processing involves the collection of grease and oil discarded by commercial establishments such as restaurants, submitting the grease and oil through a filter and cleaning processes, and selling recycled grease and oil as cooking oil and as bio-fuel while discarding non-saleable product.

6. Prior to the commencement of the receivership, Freedom and several of its officers, directors, and shareholders were embroiled in litigation over control of the Company. As a result, on or around August 13, 2012, one of the adversary parties filed voluntary petitions under Chapter 11 of the United States Bankruptcy code for Freedom (Middle District of Florida Case No. 6:12-BK-10958-KSJ) and for Brownies (Middle District of Florida Case No. 6:12-BK-10993-KSJ)

7. The Receiver was appointed by this Court on September 17, 2012, pursuant to an Order Appointing Receiver (Doc. No. 5) in the matter of Securities and Exchange Commission

---

[1] Messrs. Borish and Ciarlone are individual defendants in the instant litigation.

3

v. Freedom Environmental Services, Inc., Michael Borish, and Michael Ciarlone (Case No. 6:12-cv-1415-Orl-28-DAB) (the "Receiver Order").

8. As of the date the Receiver Order was issued, Freedom operated under the Brownie's and GRS trade names with approximately 33 combined employees. Unless otherwise noted, hereafter the term "Company" shall mean the consolidated entities of GRS, Brownie's, B&P and Freedom.

9. The Receiver Order did not list or identify B&P, Brownie's or GRS. This created problems for the Receiver as banks, vendors, and creditors were reluctant to recognize the Receiver's authority over those entities. This necessitated additional time and expense and disrupted the Receiver's activities. For example, several vehicles purchased by Freedom from Grease-Tek were titled to Grease-Tek. The State of Florida Department of Motor Vehicles would not allow the Receiver to properly re-title the vehicles. As another example, the Receiver located funds in a bank account titled to Brownie's. After numerous trips to that bank's branches and sending multiple copies of the Receiver Order, it was not until October 23rd, over a month after the initial request from the Receiver, that the bank finally agreed to surrender the funds.

10. On September 19, 2012, the Securities and Exchange Commission ("Commission") filed a Motion to Amend Order Appointing Receiver (Doc. No. 9) to include the other entities as receivership entities. However, that motion was denied (Doc. No. 10). On October 23, 2012, the Commission filed a Corrected Renewed Motion to Amend Order Appointing Receiver (Doc. No. 32). On November 2, 2012, the Corrected Renewed Motion to Amend Order Appointing Receiver was granted (Doc. 37) and the Court ordered that the Order Appointing Receiver (Doc. No. 5) be amended to include B&P, Brownies, and GRS.

11. On October 3, 2012, the Receiver filed his Application to Employ R. Scott Shuker and the Law Firm of Latham, Shuker, Eden, and Beaudine, LLP as Receiver's Counsel ("Retained Counsel"), nunc pro tunc to September 17, 2012 (Doc. No. 24). The application was approved by the Court on October 9, 2012 (Doc. No. 27).

12. On October 5, 2012, the Receiver filed an Application to Employ Morrison Valuation and Forensic Services, LLC as Forensic Accountant, nunc pro tunc to September 17, 2012 (Doc. No. 26). The Receiver is the Managing Partner of Morrison Valuation and Forensic Services, LLC (MorrisonVFS). The application was denied by the Court with a request for additional information (Doc. No. 29).

13. On October 25, 2013, the Receiver filed an Amended Application to Employ Morrison Valuation and Forensic Services, LLC as Forensic Accountant, nunc pro tunc to September 17, 2012 (Doc. No. 34). The application was approved by the Court on October 29, 2012 (Doc. No. 35).

14. At the commencement of the receivership, the Receiver found the Company to have significant cash flow problems. Critical vendors were not being paid and had revoked the Company's credit. Most vendors were requiring "cash on delivery" terms and/or significant deposits, tying up critical working capital. The Receiver was able to negotiate limited credit terms with some of the Company's critical vendors, but the Company continued to be challenged by credit issues.

15. In spite of the financial condition of the Company, the Receiver determined that once stabilized, the Company could operate with positive cash flow and that the Receiver's ultimate recovery for the benefit of creditors and equity holders would be better if the Company and/or its assets were sold as a going concern as opposed to in a liquidation.

16. On December 14, 2012, the Receiver filed a plan for an exit strategy ("Exit Plan") (Doc. No. 41). The Exit Plan contemplated negotiating with two identified parties to sell the Company and/or their assets as going concerns. To the extent that a reasonable offer could not be obtained from either of the two identified parties, the Receiver intended to seek the Court's approval to retain a business intermediary to market the Companies and/or their assets as going concerns. If the intermediary was unsuccessful in generating a reasonable offer to purchase the assets and/or the Companies, the Receiver intended to seek approval from the Court to conduct a closed bid process to sell the Companies or their assets as going concerns.

17. On January 13, 2013, Receiver, after negotiations with the Commission, made an Offer of Settlement of Freedom Environmental Services, Inc. (the "Settlement") with the Commission. Terms of the Settlement include Freedom's consent to the entry of an order by the Commission that would revoke the registration of the Company's securities. While drastic, the Commission advised the Receiver and his counsel that it would seek revocation of the registration whether or not Freedom consented. Through negotiations with the Commission, the Commission agreed to not seek monetary damages against Freedom. Any such damages would need to be paid before any distributions to unsecured creditors and to shareholders. Further, the Receiver determined that Freedom could not afford the burden of annual professional fees to comply with the Securities Exchange Act of 1934.

18. On April 16, 2013, the Receiver filed the Receiver's Motion to Approve Procedures for Sale of Certain Estate Assets, and to Conduct Sale of Estate Assets by Public Auction Pursuant to the Proposed Sale Procedures (the "Motion to Sell Assets") (Doc. No. 54).

19. The Receiver received two competing offers from prospective purchasers of the Company's assets as a going concern. After inspection and analysis of the competing offers, the

Receiver and his counsel began to negotiate the terms of an asset purchase agreement with BSP Holdings, LLC (BSP), one of the competing bidders. A final asset purchase agreement was executed by the parties on April 15, 2013 (the "BSP Offer" and the "BSP Purchase Agreement"), and was attached as Exhibit B to the Motion to Sell Assets.

20. The Motion to Sell Assets sought approval to implement a bidding procedure to sell the assets of the Company to the bidder that offered the most favorable terms. The Motion to Sell Assets also sought approval to sell the assets to BSP pursuant to the BSP Purchase Agreement in the event that the bidding process did not produce a competing bid that exceeded the BSP Offer by at least $250,000.

21. On April 29, 2013, the Court heard the Motion to Sell Assets. Objections from one of the individual defendants in the core litigation and a creditor of the Company were also heard. The Court denied the objections and approved the Motion to Sell Assets.

22. The Receiver provided copies of the Motion to Sell Assets (which included complete copies of the BSP Purchase Agreement and the Procedures for Sale of Certain Estate Assets) to the other known competing bidder, to all known creditors of the Company, and to specific grease recovery and wastewater recovery businesses in central Florida identified by the Receiver through his independent research. The Receiver also advertised an invitation to bid for four consecutive weeks in the *The Orlando Business Journal*, a weekly business journal publication.

23. The bidding period terminated on May 31, 2013 with no competing bids received. The Receiver concluded that BSP presented the best offer for the assets of the Company. Notable terms of the BSP Offer included the conversion of approximately $1.2 million of secured debt into equity, commitment to distribute 50% of any net recovery from causes of

action against former officers or professionals to unpaid creditors and/or stockholders, and a contribution of up to $250,000 toward the administrative fees and costs of the receivership estate.

24.     On June 10, 2013, the Court entered its Order Authorizing the Receiver's Sale of Certain Assets of the Receivership (Doc. No. 70). The Receiver and his counsel then commenced negotiations with representatives of BSP resulting in a closing of the transaction on June 24, 2013, at which time BSP took control of the business operations and the assets acquired pursuant to the BSP Purchase Agreement.

25.     The process of transferring credit card merchant accounts and electronic funds transfer accounts required several weeks. As of the date of this report, BSP continues to transition the operations from the Receiver to BSP. At BSP's request, the Receiver continues to receive in his receivership bank account proceeds received by BSP for services rendered by the former Brownies and GRS and, with approval by BSP officers, make ordinary course disbursements approved by BSP. Those funds are assets of BSP and not of the estate. This is a temporary arrangement that should end within 30 days.

26.     Schedules 1 and 2 attached present the balance sheet of the receivership estate as of June 30, 2013 and after conveyance of the assets acquired and liabilities assumed by BSP pursuant to the transaction. The proforma includes an estimate of the administrative fees, including the fees and costs sought by the Receiver, by the Retained Accountants, and by the Retained Counsel. There are insufficient funds and assets to pay all of the administrative fees and costs sought in this application. However, the Receiver, the Retained Accountants, and the Retained Counsel have agreed to accept a reduced amount equal to the combined value of the funds and assets in possession in full satisfaction of their administrative claims as approved by this Court.

## RECEIVER'S, RETAINED ACCOUNTANT'S, AND RETAINED COUNSEL'S FIRST REQUEST FOR FEES AND COSTS

27. The Receiver, the Retained Accountant, and the Retained Counsel request the approval of the following fees and costs for the time period of September 17, 2012 to August 31, 2013:

|  | Fees | Costs | Total |
|---|---|---|---|
| Receiver | $48,725.00 | $916.02 | $49,641.02 |
| Retained Accountants | 104,645.00 | 0.00 | 104,645.00 |
| Retained Counsel | 110,928.00 | 3,217.65 | 114,145.65 |
| Total | $264,298.00 | $4,133.67 | $268,431.67 |

28. A complete analysis of the services provided by Receiver and Receiver's Accountant, including detailed time records, is set forth in **Exhibit "A, B, and C."**

29. The Receiver retained Latham, Shuker, Eden & Beaudine, LLP (LSEB) as his Retained Counsel to assist with the administration of this case and to enable Receiver to fulfill his duties under the Amended Receivership Order.

30. The Full application, including detailed time records and a narrative description of services provided by LSEB is set forth on **Exhibit "D and E."**

31. Copies of Exhibits B, C, and E, attached to the original filed with the Court, are available upon request to R. Scott Shuker.

32. **Local Rule 3.01(g) Certification**. Pursuant to Local Rule 3.01(g), the undersigned counsel for the Receiver has discussed the relief sought herein with counsel for the SEC and is authorized to represent to this Court that the SEC consents to the granting of the relief sought in this Motion.

33. The funds to pay any allowed Professional Fees are derived from the purchase price owed by BSP, and, thus, BSP also retained the right to object to the allowance of such fees.

BSP has communicated to undersigned counsel that it objects to certain fees of Morrison Valuation. It should also be noted that the funds from BSP (which totaled $250,000.00) were evidenced by a $50,000.00 down payment and a Note for $200,000.00 to be paid in four (4) monthly installments. BSP has defaulted under the Note and did not raise any objection to Professional Fees until after it defaulted on the Note.

34. **WHEREFORE,** Receiver requests that for the period September 17, 2012 through August 31, 2013: (i) Receiver and Receiver's Accountant be awarded compensation for services in the amount of $153,370.00 and reimbursement of expenses in the amount of $916.02 for a total request of $154,286.02; (ii) LSEB, as Retained Counsel, be awarded compensation for service in the amount of $110,928.00 and reimbursements of expenses in the amount of $3,217.65 for a total request of $114,145.65; and (iii) for such other and further relief as is just and proper in the circumstances.

**RESPECTFULLY SUBMITTED** this 22nd day of November 2013.

R. SCOTT SHUKER
Florida Bar No. 984469
rshuker@lseblaw.com
bknotice@lseblaw.com
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. Magnolia Avenue, Suite 1400
PO Box 3353 (32802-3353)
Orlando, FL 32801
Tel: 407-481-5800
Fax: 407-481-5801
Attorney for Receiver

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 22, 2013, I caused to be sent by the methods stated below and to the parties listed below a true and correct copy of the foregoing RECEIVER'S FIRST INTERIM APPLICATION FOR AWARD OF FEES AND COSTS FOR THE RECEIVER AND HIS RETAINED PROFESSIONALS.

/s/ R. Scott Shuker
R. Scott Shuker, Esquire
Florida Bar No. 984469
rshuker@lseblaw.com
bknotice@lseblaw.com
Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Ave., Suite 1400
PO Box 3353 (32802-3353)
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801

Via Electronic Mail:
Robert Morrison
Morrison Valuation & Forensic Service
518 South Magnolia Ave, Suite 110A
Orlando, Florida 32801
bob.morrison@morrisonvfs.com
Receiver for Freedom Environmental Services, Inc.

Robert S. Gershman
Gershman & Gershman, PA
2160 W. Atlantic Ave., Second Floor
Delray Beach, Florida 33445
robert@rglawfirm.us
Attorney for Michael Ciarlone

Daniel Wadley, Esq.
Paul Feindt, Esq.
Thomas M. Melton, Esq.
Securities and Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
wadleyd@sec.gov
feindtp@sec.gov
meltont@sec.gov

Michael Marder, Esq.
Greenspoon Marder PA
201 E. Pine St., Suite 500,
Orlando, Florida 32801-2718
michael.marder@gmlaw.com

Via USPS:
Michael Borish
3842 Winding Lake Circle
Orlando, Florida 32835

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Resorts Marketing Professionals, Inc.
c/o Michael Borish
3842 Winding Lake Circle
Orlando, Florida 32835

Schedule 1

**SECURITIES AND EXCHANGE COMMISSION**
**v.**
**FREEDOM ENVIRONMENTAL SERVICES, INC.**

**Receivership Property as of August 31 2013**

|  | Book Value | Estimated Market Value |
|---|---:|---:|
| **Current assets:** | | |
| Cash held in Receiver's account pending transition of accounts | $ 505 | $ 505 |
| Cash owned by BSP Holdiongs, LLC | (505) | (505) |
| Cash held in escrow | 130,000 | 130,000 |
| Promissory Note | 120,000 | 120,000 |
| Accounts receivable | - | - |
| Inventory | - | - |
| Other current assets | - | - |
| Total current assets | 250,000 | 250,000 |
| **Fixed assets:** | | |
| Machinery and equipment | - | - |
| Trucks and autos | - | - |
| Office furniture and equipment | - | - |
| Leasehold improvements | - | - |
| Other fixed assets | - | - |
| Gross fixed assets | - | - |
| Accumulated depreciation | - | - |
| Net fixed assets | - | - |
| Deposits and prepaids | - | - |
| Intangible assets: | | |
| 100% equity interest in Grease Recovery Solutions, LLC | - | - |
| 100% equity interest in B&P Environmental, LLC | - | - |
| Total assets/property | $ 250,000 | $ 250,000 |

Schedule 2

**SECURITIES AND EXCHANGE COMMISSION**
v.
**FREEDOM ENVIRONMENTAL SERVICES, INC.**

**Estimated Potential Claims/Liabilities as of August 31, 2013**

NOTE: The amounts recorded below are based on an inspection and reconstruction of the Company's accounting records. The potential claims have not yet been analyzed or investigated by the Receiver. Therefore, the appearance of a creditor name or an amount on this schedule is in no way a waiver by the Receiver of his right to object to such claim. The Receiver reserves the right to amend or append this schedule at his sole discretion.

| | 6/30/13 Balance |
|---|---:|
| Accrued Administrative Expenses of Receivership | $ 271,431.67 |
| **FREEDOM ENVIRONMENTAL SERVICES** | |
| 3000 · Accounts Payable - Receivership | $ - |
| 3000 · Accounts Payable - Pre-receivership | 83,205.75 |
| Total accounts payable (see attached detail) | 83,205.75 |
| 4110 · N/P Resort Marketing | 417,754.85 |
| TOTAL FREEDOM ENVIRONMENTAL SERVICES | $ 500,960.60 |
| **B&P ENVIRONMENTAL SERVICES** | |
| 3000 · Accounts Payable - Receivership | $ - |
| 3000 · Accounts Payable - Pre-receivership | 20,012.47 |
| Total accounts payable (see attached detail) | 20,012.47 |
| 3420 · Taxes payable | $ 111,484.00 |
| TOTAL B&P ENVIRONMENTAL SERVICES | $ 131,496.47 |
| **BROWNIES WASTEWATER SOLUTIONS** | |
| 3000 · Accounts Payable - Receivership | $ - |
| 3000 · Accounts Payable - Pre-receivership | 83,728.51 |
| Total accounts payable (see attached detail) | 83,728.51 |
| Damage Claim - Engle Martin Claim Svcs | 15,126.95 |
| Due to Resorts Marketing | 53.80 |
| TOTAL BROWNIES WASTEWATER SOLUTIONS | $ 98,909.26 |
| **GREASE RECOVERY SOLUTIONS** | |
| 3000 · Accounts Payable - Receivership | $ - |
| 3000 · Accounts Payable - Pre-receivership | 3,977.29 |
| Total accounts payable (see attached detail) | 3,977.29 |
| Claim - Ford Motor Credit (2009 F-450) | 16,174.64 |
| TOTAL GREASE RECOVERY SOLUTIONS | $ 20,151.93 |
| GRAND TOTAL | $ 1,022,949.93 |